# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### KEY WEST DIVISION

## CASE NO.  10-10077-CV-KING

HARTFORD CASUALTY INSURANCE
COMPANY, a foreign corporation,

      Plaintiff,

v.

CITY OF MARATHON, a Florida municipality;
and INTRASTATE CONSTRUCTION CORP.,
a Florida corporation,

      Defendants,

_____/

## DECLARATORY DECREE GRANTING FINAL SUMMARY JUDGMENT TO HARTFORD CASUALTY INSURANCE COMPANY

    **THIS MATTER** comes before the Court upon Plaintiff Hartford Casualty Insurance

Company's and Defendant City of Marathon's cross motions for summary judgment. (Marathon's

Mo. for Sum. J., DE #31; Hartford's Mo. for Sum. J., DE #42). The Court is fully briefed,[1] and

proceeds with the benefit of extensive oral argument.[2] Upon careful consideration of the arguments

set forth in the Motions and at oral argument, the Court finds that Plaintiff Hartford Casualty

Insurance Company is entitled to summary judgment.

---

[1] Marathon responded to Hartford's Motion for Summary Judgment (DE #59) on September 20, 2011 and Hartford filed a Reply (DE #71) on September 30, 2011. Intrastate responded to Hartford's Motion for Summary Judgment (DE #65) on September 20, 2011 and Hartford filed a Reply (DE #72) on September 30, 2011. Hartford filed a Response to Marathon's Motion for Partial Summary Judgment (DE #64) on September 20, 2011, and Marathon replied (DE #73) on September 30, 2011.

[2] The Court held oral argument on the Motions in Miami, Fla. on October 12, 2011.

## I. Background [3]

In or around 2007, the Defendant City of Marathon ("Marathon"), a municipality located in Monroe County, Florida, planned and initiated the construction of a series of wastewater treatment facility projects at various geographic locations throughout the city, referred to as the Marathon advanced wastewater treatment system ("AWTS"). The AWTS was divided into seven "service areas." The above-styled action concerns the service areas known as Service Area 3 and Service Area 7.

On February 12, 2009, Defendant Intrastate Construction Corp. ("Intrastate"), a construction company incorporated under the laws of Florida, submitted its bid for the Area 3 Project. (Intrastate Area 3 Bid, DE #37-3). Intrastate submitted a total bid of $4,609,000, which incorporated Intrastate's unique construction base bid of $2,061,000.00, as well as the set third-party base equipment bid of $2,548,00.00. (Thomas Dep., at 11:14–25, DE #39-1). Intrastate's $2,061,000.00 construction bid was recommended and determined to be the lowest responsive and responsible bidder for the Area 3 Project. (Thomas Dep., at 12:4–15, DE #39-1).

On or about April 14, 2009, Intrastate and Marathon entered into a contract for the construction of the Area 3 Wastewater Treatment Facility in the amount of $2,061,000.00, entitled the City of Marathon Service Area 3 Wastewater and Stormwater Project ("Area 3 Construction Contract" or "underlying construction contract"). (Area 3 Construction Contract ¶¶ 1.1, 4.1, DE #35-1). The Contract enumerates that "[t]he Work is generally described as the following: the City of Marathon Service Area 3 Wastewater Treatment Facility. The project consists of constructing tanks, buildings, and installing wastewater treatment and plumbing facilities, complete, in place, all in

---

[3] The following facts are undisputed. (Joint Pretrial Stip., DE #76).

accordance with the construction drawings and technical specifications." (Area 3 Construction Contract ¶ 1.1, DE #35-1).

On or about June 3, 2009, Plaintiff Hartford Casualty Insurance Company ("Hartford") issued statutory performance and payment bonds for the Area 3 Project under bond number 35 BCSFD 6127 (the "Bonds"). (Bonds, DE #35-3). Hartford executed the bonds through its then-attorney-in-fact, S.P. Humenchick. (Bonds, DE #35-3, at 5). The Area 3 Performance Bond, issued in favor of Marathon, guaranteed Intrastate's performance on the contract entitled, City of Marathon Service Area 3 Wastewater and Stormwater Project. (Area 3 Performance Bond, DE #35-3, at 1). The Area 3 Payment Bond guaranteed payment to Intrastate's subcontractors, sub-subcontractors, laborers, and materialmen on the contract entitled, City of Marathon Service Area 3 Wastewater and Stormwater Project. (Area 3 Payment Bond, DE #35-3, at 7).

On August 3, 2009, Marathon issued to Intrastate its "Certification of Contractor's Insurance and Bonding," certifying that Intrastate had obtained insurance, and payment and performance bonds from Hartford in the amount of $2,061,000.00 for the project identified as the "Service Area 3 Wastewater Treatment Plant." (Certification, DE #39-2, at 13). On August 5, 2009, as a result of having received the insurance and bonding information from Intrastate, Marathon issued to Intrastate a Notice to Proceed on the Area 3 Project. (Area 3 Notice to Proceed, DE #39-2, at 14; Thomas Dep., at 20:22–21:6, DE #39-1).

Eight months later, in April 2010, Intrastate's subcontractors and suppliers began filing Notices of Nonpayment with Hartford and Marathon. (Mahler Aff. ¶ 12, DE #40-1). Then, on April 14, 2010, Intrastate contacted Hartford to inform Hartford of Intrastate's insolvency and need for financial assistance to complete various bonded projects, including the Area 3 Project. (Mahler Aff.

3

¶ 10, DE #40-1).

Later that month, on or about April 27, 2010, Intrastate and Marathon executed a document entitled Change Order No. 1 to "provide the same type of services to build another treatment plant," known as the Area 7 Wastewater Treatment Facility Project ("Area 7 Change Order"). (Area 7 Change Order, DE #35-4; Thomas Dep., at 21:7–16, DE #39-1). The Area 7 Change Order did not modify the plans for the Area 3 Project. (Thomas Dep., at 40:18–25, DE #39-1). Rather, the Area 7 Project was to proceed under a completely separate set of plans and specifications. (Thomas Dep., at 40:18–25, DE #39-1).

The Area 7 Project was to be constructed at a project site located on Grassy Key, approximately 5.5 miles away from the Area 3 Project. (Thomas Dep., at 41:3–5, DE #39-1). The timeline for completing the Area 7 Project was independent of the timeline for completing the Area 3 Project. (Thomas Dep., at 44:19–45:7, DE #39-1). In addition, the Area 7 Project came at an added cost of $2,984,487.00 to the underlying construction contract. (Area 7 Change Order, DE #35-4). Ultimately, the Area 7 Change Order increased the bonded contract amount from $2,061,000.00 to $5,045,487.00—an increase of over 144 percent of the original contract sum. (Area 7 Change Order, DE #35-4).

For the Area 7 Project, Marathon issued a separate Notice to Proceed. (Thomas Dep., at 44:9–18, DE #39-1; Area 7 Notice to Proceed, DE #39-3, at 2). Pursuant to the terms of the Notice to Proceed, Intrastate was required to provide additional performance and payment surety in the amount of $2,984,487.00.[4] (Area 7 Notice to Proceed, DE #39-3, at 2).

---

[4] Prior to the Area 7 Notice to Proceed, Marathon received a letter from S.P. Humenchick relating Hartford's purported consent to the Area 7 Change Order. (May 14, 2010 Humenchick Letter, DE #35-5). The record does not contain any evidence that Hartford executed any bond document for the Area 7 Change Order, that any such bond was recorded, or that Intrastate

On June 30, 2010, Hartford informed Marathon by letter that it had not and would not bond

the Area 7 Change Order and thereby extend the value of its bond from $2,061,000.00 to

$5,045,487.00. (DE #35-6). Hartford, however, did not disavow that it was responsible for the

$2,061,000.00 Area 3 Performance Bond. Nevertheless, on August 6, 2010, attorneys representing

Marathon sent Hartford a letter titled "Notice of Default and Termination," terminating Intrastate

from its work on both the Area 3 Project and the Area 7 Project. (Aug. 6, 2010 Marathon Letter, DE

#35-7). Marathon terminated Intrastate on both the Area 3 Project and the Area 7 Project because

Hartford refused to bond the Area 7 Change Order. (Aug. 6, 2010 Marathon Letter, DE #35-7;

Thomas Dep., at 53:14–54:9, DE #39-1). Intrastate performed no more work on the Area 3 Project

and the Area 7 Project after the delivery of that letter.

On August 9, 2010, Hartford filed the instant action against both Marathon and Intrastate for

declaratory relief seeking judgment from this Court declaring that: (i) the Area 7 Change Order was

void *ab initio* for illegality; and (ii) that no bond issued by Hartford, including but not limited to

bond number 35 BCSFH 6127, affords coverage for the Area 7 Change Order.[5] (Compl., DE #1).

Hartford's primary allegation is that Marathon's failure to competitively bid the Area 7 Change

Order violated Florida statutes so that Hartford never had an obligation to bond the Area 7 Project.

---

submitted an additional Certification of Contractor's Insurance and Bonding to Marathon for the
Area 7 Change Order. *See* FLA. STAT. § 255.05(1)(a) (2007).

[5] Hartford's Complaint also seeks a declaration from this Court that no surety relationship
exists between Hartford and the Defendants with respect to the Area 7 Change Order. (DE #1).
Since the filing of the Complaint, Defendant Marathon has retained a replacement contractor and
surety for the Area 7 Project at no loss, and has declared that it is not seeking damages in its
counterclaim for coverage of the Area 7 Project. (Marathon's Resp. to Hartford's Mo. for
Summary Judgment, DE #59, at 3). Accordingly, the Court will not address any arguments that
pertain to whether a surety relationship presently exists between Hartford and the Defendants
with respect to the Area 7 Change Order or whether Marathon may recover for breach of contract
for the alleged Area 7 Performance Bond.

Hartford further argues that "Marathon's termination of Intrastate from the Area 3 Project based upon Hartford's refusal to bond the Area 7 Change Order constitutes a material breach of the Contract, thereby relieving Hartford of its performance obligations under the Bonds." (DE #64, at 19).

On October 19, 2010, Marathon filed its Answer and Affirmative Defenses, and also brought a counterclaim against Hartford for breach of contract, alleging that "Hartford had breached the Performance Bond by failing to honor its obligations under the Performance Bond, including compensating Marathon for the losses it incurred as a result of Intrastate's breach of the Contract." (Marathon's Counterclaim, ¶ 14, DE #19). In its Answer to Marathon's Breach of Contract Counterclaim, Hartford raised, among others, the following affirmative defenses: The first is that "the City of Marathon's claims are barred by the doctrine of cardinal change." (Hartford's Ans. to Marathon's Counterclaim, DE #22, ¶ 6). The second is that "the City of Marathon's claims are barred under the performance bond due to the improper default and termination of Intrastate based upon Hartford's declination to bond an illegal and void change order." (Hartford's Ans. to Marathon's Counterclaim, DE #22, ¶ 7). Presently, a bench trial on all issues is scheduled for the two-week trial period commencing November 28, 2011 in Key West, Fla. .

Before the Court now are Hartford's and Marathon's cross motions for summary judgment. (Marathon's Mo. for Sum. J., DE #31; Hartford's Mo. for Sum. J., DE #42). Hartford moves for summary judgment on both its declaratory relief claim and Marathon's breach of contract counterclaim, while Marathon moves for partial summary judgment on its breach of contract counterclaim as it pertains to the Area 3 Performance Bond. As the Motions raise interrelated arguments, the Court will address the Parties' positions on the motions in a consolidated manner.

6

## II. Legal Standard

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of pointing to the part of the record that shows the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (holding that the nonmoving party must "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact.").

"Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts." *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *See id.* at 252. If the record as a whole could not lead a rational fact-finder to find for the nonmoving party, there is no genuine issue of fact for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

7

## III. Analysis

The overarching issue in this matter is the extent to which Hartford, as a surety, is liable pursuant to a performance bond issued on a construction contract executed by Marathon and Intrastate. The performance bond at the center of the above-styled action is governed by Florida state law. FLA. STAT. § 255.05 (2007). Accordingly, the Court's analysis begins with a brief synopsis of the relevant Florida law on performance bonds.

There is a statutory requirement in Florida that all public construction projects over $200,000 be secured by a performance bond. FLA. STAT. § 255.05 (2007). A performance bond is a contract by which a surety guarantees the performance of a contractor on a specified construction contract. *Am. Home Assurance Co. v. Larkin Gen. Hosp., Ltd.*, 593 So.2d 195, 198 (Fla. 1992). "Ordinarily a performance bond only ensures the completion of the contract." *Id.* If the contractor defaults, then "[t]he surety agrees to complete the construction or to pay the obligee the reasonable costs of completion if the contractor defaults." *Id.*; *see also* FLA. STAT. § 627.756(2). "[T]he surety's liability for damages is limited by the terms of the bond," and the surety's liability "should not be extended by implication." *Larkin*, 593 So.2d at 198. "[T]he liability of the surety is ordinarily measured by, and coextensive with, the liability of the principal." *Crabtree v. Aetna Cas. and Sur. Co.*, 438 So.2d 102, 105 (Fla. Dist. Ct. App. 1983).

In the above-styled action, Hartford seeks a declaration from this Court as to its rights and liabilities under the Area 3 Performance Bond. Specifically, Hartford seeks a declaration that the Area 3 Performance Bond did not obligate Hartford to extend its bond to the Area 7 Change Order. As a counterclaim, Marathon seeks to recover for Hartford's alleged breach of contract of the Area

8

3 Performance Bond.[6] Before the Court now is Hartford's Motion for Summary Judgment on the declaratory relief claim and Hartford's and Marathon's cross motions for summary judgment on Marathon's breach of contract counterclaim. (Marathon's Mo. for Sum. J., DE #31; Hartford's Mo. for Sum. J., DE #42). In the interest of efficiency, the Court will first address the Parties' arguments with respect to Hartford's claim for declaratory relief as the resolution of that matter necessarily affects the success of Marathon's breach of contract counterclaim.

## A. Declaratory Relief Claim

Hartford seeks declaratory judgment on (i) whether the Area 7 Change Order was void *ab initio* for illegality and (ii) whether the bond issued by Hartford, including but not limited to bond number 35 BCSFH 6127, affords coverage for the Area 7 Change Order. (DE #1). In light of the undisputed material facts on the record, whether the Area 7 Change Order is void and whether the Area 3 Performance Bond extends to change orders, specifically the Area 7 Change Order, are both questions of law properly submitted to the Court for determination at the summary judgment stage. *See generally Fernandez v. Homestar at Miller Cove, Inc.*, 935 So.2d 547, 550 (Fla. Dist. Ct. App. 2006) ("if a contract is unambiguous, the construction of the contract presents a question of law.").

On its Motion for Summary Judgment, Hartford argues that despite the language of the Area 3 Performance Bond, it never had an obligation to bond the Area 7 Change Order because the Area 7 Project was void from the start when Marathon failed to competitively bid the project under the relevant statutes. (DE #42). In response, Marathon and Intrastate argue that the plain language of the Area 3 Performance Bond, in conjunction with the incorporated underlying construction contract,

---

[6] Despite Marathon's allegations that Intrastate defaulted on the underlying construction contract, Marathon has not brought a breach of contract cross-claim against Intrastate.

requires a finding by this Court that Area 3 Performance Bond automatically extends to any and all change orders without any requirement of notice to or consent on behalf of Hartford. (Transcript of Hearing, at 41–46.) Marathon and Intrastate further argue that "Marathon did not fail to waive bidding requirements relative to the Change Order because the labor and material costs for the Change Order work was a continuation of and derived from the competitively bid and awarded unit prices of the base contract." (Marathon's Statement of Undisputed Facts, ¶ 25, DE #57, at 4). Specifically, Marathon characterizes the Area 3 and Area 7 Projects as "constituent and interrelated elements of Marathon's statutorily mandated Wastewater Treatment Project." (Marathon's Statement of Uncontested Facts, ¶ 30, DE #57, at 5).

### i. The Plain Language of the Contracts

The Court first looks to the plain language of the Area 3 Performance Bond and the underlying construction contract to determine whether Marathon's contention—that the Area 3 performance bond automatically adjusted and obligated Hartford to bond any and all changes to the underlying contract—is accurate. The Area 3 Performance Bond addresses changes to the underlying construction contract in the following manner:

> Any changes in or under the Contract Documents and compliance or noncompliance with formalities, connected with the Contract or with the changes, do not affect the Surety's obligation under this bond. Surety hereby waives notice of any alteration or extension of time made by the City.

(Area 3 Performance Bond, DE #35-3). The Area 3 Performance Bond also incorporates by reference the underlying construction contract. Article 9 of the General Conditions of the underlying construction contract sets forth the contract's change provisions. Section 9.1 states:

> Without invalidating the Contract and without notice to any surety, CITY may, at any time and from time to time, order additions, deletions, or revisions in the Work by

10

a Written Amendment or Change Order. Upon receipt of any such document, CONTRACTOR shall promptly proceed with the Work involved which will be performed under the applicable conditions of the Contract Documents (except as otherwise specifically provided). All such changes in the Work shall be authorized by a Change Order.

(Underlying Construction Contract § 9.1, DE #35-2, at 22). Section 9.5 continues:

If notice of any change affecting the general scope of the Work or the provisions of the Contract Documents (including, but not limited to, Contract Price or Contract Time) is required by the provisions of any Bond to be given to a surety, the giving of such notice shall be CONTRACTOR'S sole responsibility, and the amount of each applicable bond shall be adjusted accordingly.

(Underlying Construction Contract § 9.5, DE #35-2, at 22) (emphasis added).

"The language in the performance bond, construed together with the purpose of the bond, govern a surety's obligations under the bond." *Auto Owners Ins. Co. v. Travelers Cas. & Sur. Co.*, 227 F. Supp. 2d 1248, 1265 (M.D. Fla. 2002) (citing *Larkin*, 593 So.2d at 197). Upon review of the plain language of the contracts, the Court finds that Hartford consented to changes, including "additions, deletions, or revisions in the Work," as well as "change affecting the general scope of the Work." The Court rejects, however, Marathon's proposition that Marathon had the unlimited, unilateral right to change the price and scope of the underlying contract.

Given this preliminary ruling, the Court now turns to Hartford's argument that the Area 7 Change Order constituted a cardinal change to relieve Hartford of liability.[7] Although Hartford

---

[7] Hartford raised the cardinal change doctrine as an affirmative defense to Marathon's breach of contract counterclaim (Hartford's Affirmative Def. ¶ 6, DE #22) and argued the doctrine both in response to Marathon's Motion for Partial Summary Judgment (DE #64, at 24) and at the October 12, 2011 hearing. In addition, the Parties extensively argued the degree to which the Area 7 Change Order was or was not a departure from the Area 3 Project in context of the applicability of Florida's competitive-bidding statute. *See AT&T Commc'n, Inc. v. Wiltel, Inc.*, 1 F.3d 1201, 1205 (Fed. Cir. 1993) (recognizing the interrelation between the relative applicability of the cardinal change doctrine and competitive-bidding statutes). Accordingly, the Court finds the issue of whether the Area 7 Change Order qualifies as a cardinal change to relieve Hartford of its obligation to bond the Area 7 Change Order is ripe for ruling.

consented to change orders through the change provisions of the underlying construction contract, if the nature and magnitude of the change order is far beyond what the parties anticipated when they entered into the contract, it may nevertheless qualify as a cardinal change to relieve Hartford of liability. Pursuant to the cardinal change doctrine, the resolution of whether Hartford was obligated to bond the particular Area 7 Change Order turns on the extent to which the undisputed material facts indicate that the Area 7 Change Order was a significant enough deviation from the scope of the underlying construction contract to relieve Hartford of its liability under the performance bond.

### ii. The Cardinal Change Doctrine As a Defense to Surety Liability

From the turn of the Nineteenth Century to present day, the law regarding how a change in the underlying contract affects a surety's obligations and liabilities has drastically evolved. In 1953, the Florida Supreme Court rejected the longstanding view that any change to the underlying contract, no matter how minor or seemingly insignificant, relieved the surety of all liability on the performance bond regardless of any showing of prejudice to the surety. *Gibbs v. Hartford Acc. & Indem. Co.*, 62 So.2d 599, 604 (Fla. 1953) (reversing summary judgment where disputed facts existed as to the extent of injury, if any, suffered by surety); *see also Dev. Corp. of Am. v. United Bonding Ins. Co.*, 413 F.2d 823, 826 (5th Cir. 1969) ("it is the rule in Florida that a departure from a construction contract will not automatically relieve and exonerate a surety"); *Basic Asphalt & Const. Corp. v. Parliament Ins. Co.*, 531 F.2d 702, 703 (5th Cir. 1976).[8] Instead, the Florida Supreme Court expressly adopted the view that to be relieved of liability on a performance bond, the surety must show the existence of a material change that caused injury or prejudice to the surety. *Gibbs*, 62 So.2d at 604. Specifically, the Florida Supreme Court held that "that if the departure from

---

[8] *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (holding Fifth Circuit opinions prior to Oct. 2, 1981 are binding precedent in the Eleventh Circuit).

*Gibbs*, 62 So.2d at 604. Specifically, the Florida Supreme Court held that "that if the departure from the construction contract results in injury to the surety then *ipso facto* such departure must be classified as material but the surety should be relieved and discharged only to the extent of the injury." *Id.*

Since the 1953 *Gibbs* opinion, there are strikingly few cases from the Florida state courts or the Eleventh Circuit that analyze the effect a change to the underlying contract has on a surety's liability. Notably, while a few cases stand for the proposition that a material change may relieve a surety of its liability, none of the cases address the factual scenario of the instant case whereby the surety, by its performance bond contract, consented to changes to the underlying contract. To that end, Hartford directs the Court's attention to the cardinal change doctrine.

Initially, the cardinal change doctrine was conceived in the United States Court of Federal Claims.[9] *See generally Am. Line Builders, Inc. v. United States*, 26 Cl. Ct. 1155, 1177 (Cl. Ct.1992) (providing historical background of the doctrinal development of the cardinal change doctrine). The doctrine "was created as a check on the government's ability to circumvent the competitive-bidding process by ordering drastic changes beyond those contemplated in the contract . . . ."[10] *J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1020 (Nev. 2004); *see also L.K. Comstock & Co., Inc. v. Becon Const. Co., Inc.*, 932 F. Supp. 906, 937 (E.D. Ky. 1993) ("The power of the owner, be it a federal agency or a private developer, to order changes is subject to abuse."). A

---

[9] The United States Court of Federal Claims was formerly known as the United States Claims Court.

[10] Like the Federal Miller Act, Florida's Little Miller Act requires that public construction projects be subject to competitive bidding. FLA. STAT. § 255.20 (2009). The Parties dispute whether the Area 7 Project was competitively bid. (Joint Pretrial Stip, DE #76). The Court does not reach Hartford's claim that Marathon violated the competitive bidding statutes.

successful cardinal change doctrine defense serves to relieve a contractor (and its surety) of performance liability when a government entity orders a change to the underlying construction contract that "effectively requires the contractor to perform duties materially different from those originally bargained for." *Allied Materials & Equip. Co. v. United States*, 569 F.2d 562, 563–64, 215 Ct. Cl. 406 (Ct. Cl. 1978).

Although there is no caselaw in Florida on the cardinal change doctrine, many state and federal courts throughout the nation accept the doctrine as a valid defense in the context of both public and private construction contracts. *See generally L.K. Comstock & Co., Inc.*, 932 F. Supp. at 937 (providing an accounting of the adoption of the cardinal change doctrine in state and federal courts around the country).[11] In addition, courts have acknowledged specifically a surety's prerogative to raise the cardinal change doctrine as a defense to bonding a contract that has been materially altered by the owner and the contractor. *See, e.g., United States ex rel. Sun Const. Co., Inc. v. Torix Gen. Contractors, LLC*, Case No. 07-cv-01355-LTB-MJW, 2009 WL 3348287, at *3 (D. Colo. Oct. 15, 2009) [hereinafter "*Sun Const. Co.*"]; *In re Tech. For Energy Corp.*, 140 B.R. 214, 217 (Bankr. E.D. Tenn. 1992); *United States v. Seaboard Sur. Co.*, 622 F. Supp. 882, 887 (E.D.N.Y. 1985). Accordingly, in the absence of any binding precedent disavowing the doctrine, this Court finds the analytical framework established by this growing body of persuasive caselaw on the

---

[11] *See, e.g., Gill Const., Inc. v. 18th & Vine Auth.*, 157 S.W.3d 699 (Mo. Ct. App. 2004) (recognizing cardinal change doctrine under Missouri law); *J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009 (Nev. 2004) (adopting cardinal change doctrine in Nevada); *Hensel Phelps Const. Co. v. King Cnty.*, 57 Wash. App. 170, 787 P.2d 58 (Wash. Ct. App. 1990) (acknowledging cardinal change doctrine in Washington); *Housing Auth. of City of Texarkana v. E. W. Johnson Const. Co.*, 264 Ark. 523, 573 S.W.2d 316 (Ark. 1978) (permitting parol evidence to prove cardinal change in Arkansas).

cardinal change doctrine to be applicable to the instant matter, subject to a finding of prejudice to the surety. *See Gibbs*, 62 So.2d at 604.

To determine whether a change order is outside the general scope of the underlying construction contract so as to qualify as a cardinal change, courts look to the following factors:

> (i) whether there is a significant change in the magnitude of work to be performed;
> (ii) whether the change is designed to procure a totally different item or drastically alter the quality, character, nature or type of work contemplated by the original contract; and (iii) whether the cost of the work ordered greatly exceeds the original contract cost.

*Becho, Inc. v. United States*, 47 Fed. Cl. 595, 601 (Fed. Cl. 2000). A court must conduct a fact-intensive, case-by-case analysis of the aforementioned factors. *See, e.g., id.* The caselaw is clear that "if fact questions exist as to whether the modification in question was a cardinal change, partial summary judgment would not lie." *See, e.g., id.; see also PCL Const. Serv., Inc. v. United States*, 47 Fed. Cl. 745, 804 (Fed. Cl. 2000) (holding that the moving party "must prove facts with specificity that support its allegations that a cardinal change occurred"). As a corollary, if no rational fact-finder, upon consideration of the undisputed facts, could find that the change was not a cardinal change, then summary judgment is appropriate. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

With regard to the first factor—"whether there is a significant change in the magnitude of work to be performed"—other courts have held that changes, such as the color of the walls, doorframe modifications, and the lowering of ceilings, did not constitute a cardinal change where "the completed project was not substantially different from that contemplated in the original contract plans." *See, e.g., Wunderlich Contracting Co. v. United States*, 351 F.2d 956, 966 (Ct. Cl. 1965) (finding no cardinal change despite 35 change orders).  In addition, a federal district court in Colorado denied summary judgment in light of unresolved issues of fact concerning whether a two-

15

year delay and $1,000,000 in increased costs qualified as "significant changes" where the contractor "built the same tunnel they originally were hired to build, and in essentially the same manner and location." *Sun Const. Co.*, 2009 WL 3348287, at *4.

The instant case is different from the aforementioned because, here, the undisputed facts reveal that the Area 7 Change Order obligated Intrastate to build "another treatment plant," based on separate plans and specifications, 5.5 miles away. (Area 7 Change Order, DE #35-4; Thomas Dep., at 21:7–16, 40:18–25, 41:3–5, 44:19–45:7, DE #39-1). This was not a change order that merely extended or altered the specifications, timeline, or cost of the original treatment plant—this was a change order that ordered the building of a *second* treatment plant. Given the undisputed facts, the Court finds, as a matter of law, that the Area 7 Change Order satisfies the first factor.

The second factor asks whether the change was "contemplated by the original contract." *Becho*, 47 Fed. Cl. at 601. Marathon argues that despite the difference in location of the separate treatment plants, the Area 7 Change Order was not authorizing a separate project under the contract because the plain language of the underlying construction contract contemplated changes and that the Area 3 Project and Area 7 Project were interrelated because they were both part of Marathon's larger AWTS plan. (Marathon's Statement of Undisputed Facts ¶ 30, DE #57, at 5). The Court has already found, *supra* Part III.A.i, that the underlying construction contract does contemplate changes. Yet, Marathon's argument, taken to its logical extreme, would permit Marathon to issue change orders to include the entirety of the seven AWTS service areas under the Area 3 Contract and, in turn, obligate Hartford to bond additional millions of dollars without conducting an assessment of risk. The Court finds the fact that the Area 3 Project and the Area 7 Project were both part of an expansive overhaul of the water treatment system in City of Marathon to be insufficient, standing

alone, to prove that the addition of the Area 7 Project (or any of the other seven treatment areas) was contemplated at the time Marathon, Intrastate, and Hartford executed the construction and bond contracts for the Area 3 Project.

The third factor concerns the extent to which the change increases the cost of the bonded project. *Becho*, 47 Fed. Cl. at 601. Given the wide range of contract prices, courts typically analyze this factor in terms of percentage of cost increase. For instance, increases in cost of less than 100 percent tend not to trigger the cardinal change doctrine, while increases in cost over 100 percent do. *Compare Wunderlich Contracting Co.*, 351 F.2d at 966 (finding 6% increase in costs did not constitute cardinal change), *with Peter Kiewit Sons' Co. v. Summit Const. Co.*, 422 F.2d 242, 255 (8th Cir. 1969) (holding threefold change in contract price, from $600,000 to $2,000,000 constituted change outside the scope of the contract). In the instant case, the original contract price was for $2,061,000.00. (Area 3 Construction Contract, DE #35-1). The Area 7 Change Order came at an additional cost of $2,984,487.00—an increase of over 144 percent of the original contract sum. (Area 7 Change Order, DE #35-4). Therefore, the Court finds that the undisputed facts show that the change "greatly exceed[ed] the original contract cost" so as to satisfy the third factor. *Becho*, 47 Fed. Cl. at 601.

Upon careful consideration of the undisputed facts in the context of the cardinal change doctrine factors, the Court finds that the Area 7 Change Order was a cardinal change to the underlying construction contract. The Court further finds that the undisputed facts on the record demonstrate a significant, and potentially unbounded, increase in risk so as to prejudice and injure Hartford. *Gibbs*, 62 So.2d at 604. Accordingly, the Court finds that pursuant to the cardinal change doctrine and the standard set forth by the Florida Supreme Court in *Gibbs* that Hartford was not

obligated to bond the Area 7 Change Order. Therefore, summary judgment on this declaratory relief issue must be granted in favor of Hartford. The Court now turns to the cross motions on Marathon's breach of contract counterclaim.

### B. Marathon's Breach of Contract Counterclaim

Pursuant to its breach of contract counterclaim, Marathon seeks damages for its losses on the cost of completion of the Area 3 Project after Marathon terminated Intrastate. [Hearing at p. 32:11-14.] Hartford and Marathon have filed cross motions for summary judgment on Marathon's breach of contract counterclaim. Marathon advances four arguments in support of its motion: (i) Hartford allegedly conceded that it is bound by the Area 3 Performance Bond; (ii) Hartford consented to bond the Area 7 Change Order via its attorney-in-fact; (iii) Hartford was automatically bound to bond the Area 7 Change Order and breached the existing performance bond when it attempted to negotiate and execute a Takeover Agreement as opposed to performing under the original conditions of the bond; and (iv) Hartford is liable on the performance bond because Intrastate breached the underlying construction contract when it failed to secure additional bonding for the Area 7 Change Order pursuant to the Notice to Proceed. (DE #31, at 13 ; DE #73, at 4–5). In its defense, Hartford argues that it was Marathon who defaulted on the underlying construction contract and not Intrastate. The crux of Hartford's defense is that Hartford was released from its obligations on the Area 3 Performance Bond when Marathon defaulted by improperly terminating Intrastate from the Area 3 Project based upon Hartford's refusal to bond the Area 7 Change Order. (DE #64, at 19). The Court will address each of the Parties' arguments in turn.

With regard to Marathon's first argument, the Court is unwilling to find that Hartford conceded its liability on the losses of the Area 3 Project by stating that Hartford never disavowed

18

the Area 3 Bond. The Court finds that in furtherance of its argument Marathon improperly relies on inadmissible evidence of prior settlement negotiations, in direct contravention of Rule 408 of the Federal Rules of Evidence. As such, the Court disregards the statements in furtherance of settlement negotiations and any argument that relies thereon. Further, the Court is not persuaded by what is left of Marathon's argument as it amounts to nothing more than an exercise in semantics. (DE #73, at 3–4). The law is clear that a party's acknowledgment of the validity of a contract is the first step to alleging its breach. *See, e.g.*, *Beck v. Lazard Freres & Co.*, LLC, 175 F.3d 913, 914 (11th Cir. 1999) ("The elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages."). Therefore, it is perfectly legitimate, and expected, that Hartford would simultaneously affirm the validity of the Area 3 Performance Bond and allege affirmative defenses, including the cardinal change doctrine and breach on behalf of Marathon.

Marathon's next argument is that Hartford expressly consented to extend a performance bond for the Area 7 Change Order. Pursuant to Florida statute, the physical bond document for the construction of a public building must be delivered to the public owner and "record[ed] in the public records of the county where the improvement is located." FLA. STAT. § 255.05(1)(a) (2007). The bond must also provide "a description of the project sufficient to identify it, such as a legal description or the street address of the property being improved." *Id.* Here, the only evidence on the record of Hartford's consent to bonding the Area 7 Change Order is the May 14, 2010 letter from S.P. Humenchick. (May 14, 2010 Humenchick Letter, DE #35-5). Upon a thorough review of the record, there is no evidence that a physical bond document for the Area 7 Change Order ever existed or that any bond was recorded in accordance with Florida statute. In light of the relevant Florida

statute, the Court finds, as a matter of law, that the May 14, 2010 letter, standing alone, is insufficient to bind Hartford to bond the Area 7 Change Order.

Marathon's remaining arguments turn on whether Marathon properly terminated Intrastate from the Area 3 Project. To decide these issues, the Court must first look to the default and termination provisions of the underlying construction contract.

Pursuant to the construction contract, Marathon could terminate Intrastate for cause for "any material breach or for default under the terms as specified," as well as if Intrastate

> fail[ed] to commence the Work in accordance with the provisions of this Contract, fail[ed] to perform the Work or portions thereof to completion thereof in a diligent, efficient, workmanlike, skillful and careful manner and in strict accordance with the provisions of the Contract Documents, fail[ed] to use an adequate quantity or quality of personnel, equipment, or material to complete the Work within the Contract Time, fail[ed] to perform any of its obligations under the Contract Documents, be adjudged bankrupt . . . or fail[ed] to make prompt payments to its Subcontractors, materialmen or laborers . . . .

(Underlying Construction Contract, ¶ 14.16.2, DE #35-2, at 32–33). Upon Marathon's termination of Intrastate for cause, Hartford "shall take over and perform this Contract." (Underlying Construction Contract, ¶ 14.16.2.1, DE #35-2, at 33). The underlying construction contract also provides that

> [i]f after termination of this Contract under this Section [14.16.2], it is determined that [Intrastate] was not in default or that sufficient cause to terminate under Section 14.16.2 did not exist, the rights and obligations of the parties shall be the same as if the termination had been issued for the convenience of the CITY under Section 14.16.1 . . . .

(Underlying Construction Contract, ¶ 14.16.2.2, DE #35-2, at 33). Under the provisions of section 14.16.1, termination without cause, Intrastate could collect payment for the work completed, but

20

Hartford's liability, as the surety, would not be triggered. (Underlying Construction Contract, ¶ 14.16.1, DE #35-2, at 32).

One of Intrastate's obligations under the Contract Documents was to secure a performance bond for the Area 7 Change Order. (Underlying Construction Contract, ¶ 16.1, DE #35-2, at 35; Area 7 Notice to Proceed, DE #39-3, at 2). Marathon alleges that Hartford is liable on the Area 3 Performance Bond because Intrastate breached the underlying construction contract when Intrastate failed to secure surety bonding for the Area 7 Change Order pursuant to the Notice to Proceed. (DE #73, at 8; Hearing at p. 58:4-7). Yet, the undisputed evidence on the record shows that Marathon terminated Intrastate on both the Area 3 and Area 7 Projects solely because Hartford refused to bond the Area 7 Change Order. (Aug. 6, 2010 Letter, DE #35-7; Thomas Dep., at 53:5–24, DE #39-1). Therefore, the only remaining issue before the Court is whether Hartford's refusal to bond the Area 7 Change Order was a sufficient ground under section 14.16.2 of the underlying construction contract for Marathon's termination of Intrastate on the Area 3 Project.

The Court has already ruled that Hartford had no obligation to bond the Area 7 Change Order as it was a cardinal change to the underlying construction contract. Further, the Court notes that Intrastate maintained adequate bonding for the Area 3 Project in accordance with both the underlying construction contract and Florida statute. FLA. STAT. § 255.05(1)(c)(1) (2007); (Underlying Construction Contract ¶ 16.1.1, DE #35-2, at 35). In addition, pursuant to Florida statute, Marathon could not require Intrastate to secure the bonding for the Area 7 Project from Hartford specifically. FLA. STAT. § 255.05(1)(a) (2007) ("A public entity may not require a contractor to secure a surety bond under this section from a specific agent or bonding company."). Accordingly, the Court finds

that Hartford's refusal to bond the Area 7 Project was a spurious and improper reason for Marathon to terminate Intrastate on the Area 3 Project.

As Marathon terminated Intrastate for an insufficient cause, the termination comes within the provisions of section 14.16.1, termination without cause. (Underlying Construction Contract, ¶ 14.16.2.2, DE #35-2, at 33). Under section 14.16.1, Hartford's duty to perform the remainder of the Area 3 Project was never triggered. As a result, Hartford had no obligation to the complete the Area 3 Project and, therefore, did not breach the terms of the Area 3 Performance Bond by not completing the Area 3 Project. Accordingly, the Court finds that it must grant summary judgment in favor of Hartford on Marathon's breach of contract counterclaim.

## IV. Conclusion

Upon careful consideration of the Parties' pleadings and the undisputed facts on the record, the Court finds that Hartford never had an obligation to bond the Area 7 Change Order because it was a cardinal change to the underlying construction contract. The Court further finds that Marathon's termination of Intrastate on the Area 3 Project was for an insufficient cause thereby relieving Hartford of any liability on the remainder of the Area 3 Project.

Accordingly, having considered the parties' filings and being otherwise advised, it is hereby **ORDERED**, **ADJUDGED**, **and DECREED** as follows:

1. Hartford's Motion for Summary Judgment (**DE #42**) be, and the same is hereby, **GRANTED**. The Court **DECLARES** that the Area 7 Change Order was void and that Hartford had no obligation to bond the Area 7 Change Order.

2. Marathon's Motion for Partial Summary Judgment (**DE #31**) be, and the same is hereby, **DENIED**.

22

**DONE and ORDERED** in Chambers at the James Lawrence King Federal Justice Building

and United States Courthouse in Miami, Florida on this 18th day of November, 2011.

JAMES LAWRENCE KING
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

cc:

*Counsel for Hartford*

**Elaine Witherspoon**
Vezina, Lawrence, & Piscitelli, P.A.
121 Alhambra Plaza
Suite 1604
Coral Gables, FL 33134
305-443-2043
Email: ewitherspoon@vlplaw.com

**Timothy Shane Taylor**
Vezina Lawrence & Piscitelli
121 Alhambra Plaza
Suite 1604
Coral Gables, FL 33134
305-443-2043
Fax: 305-443-2048
Email: ttaylor@vlplaw.com

*Counsel for Marathon*

**Joy Spillis Lundeen**
Stearns Weaver Miller Weissler Alhadeff & Sitterson
Museum Tower
150 W Flagler Street
Suite 2200
Miami, FL 33130
305-789-3425
Fax: 789-3395
Email: jlundeen@stearnsweaver.com

**Christopher Lawrence Barnett**
Stearns Weaver Miller Weissler Alhadeff & Sitterson
Museum Tower
150 W Flagler Street

23

Suite 2200
Miami, FL 33130
305-789-3200
Fax: 789-3395
Email: cbarnett@stearnsweaver.com

**Zachary Scott Bower**
Stearns Weaver Miller Weissler Alhadeff & Sitterson
Museum Tower
150 W Flagler Street
Suite 2200
Miami, FL 33130
305-789-3200
Fax: 789-3395
Email: zbower@stearnsweaver.com

*Counsel for Intrastate*

**Michael English Stearns**
Leiby Stearns & Roberts
1000 Sawgrass Corporate Pkway
Suite 552
Fort Lauderdale, FL 33323
954-382-9199
Fax: 382-9063
Email: mes@stearnsroberts.com

**Douglas James Roberts**
Leiby Taylor Stearns & Roberts
1000 Sawgrass Corporate Pkway
Suite 552
Fort Lauderdale, FL 33323
954-382-9199
Fax: 382-9063
Email: djr@leibylaw.com