UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

CASE NO. 10-10077-CIV-KING

HARTFORD CASUALTY INSURANCE
COMPANY,

    Plaintiff,

v.

CITY OF MARATHON and INTRASTATE
CONSTRUCTION CORP.,

    Defendants.
_____/

## JUDGMENT

**THIS MATTER** comes before the Court upon completion of the bench trial, held from June 16-18, 2015 in Key West, Florida.

## FINDINGS OF FACT

### I. Background

    In 2000, Congress appropriated $100 million for the construction of wastewater treatment facilities to improve water quality in the Florida Keys National Marine Sanctuary. Pursuant to this congressional appropriation, Marathon, a municipality in the Florida Keys, initiated a series of projects to construct wastewater treatment facilities within several geographical services areas of the city.

*Hartford Cas. Ins. Co. v. Intrastate Constr. Corp.*, 501 F. App'x 929, 930-31 (11th Cir. 2012). In 2007, Marathon planned and initiated the construction of a series of wastewater treatment facility projects at various geographic locations throughout Marathon; the seven geographic service areas are labeled "Area 1" through "Area 7." In May of 2009,

Marathon entered into a contract with Intrastate Construction Corp. ("Intrastate"), in which Intrastate agreed to construct a wastewater treatment plant in Area 3 in exchange for $2,061,000 (the "Area 3 project"). *Id.* at 931.

The Area 3 contract provides, *inter alia*: Intrastate must secure payment and performance bonds in an amount equal to 100% of the contract price; and Marathon may order additions, deletions, or amendments to the contracted work, upon receipt of which Intrastate must secure an adjustment of its performance bond to 100% of the amended contract price. *See id.* To satisfy its initial bonding obligations, Intrastate turned to Hartford Casualty Insurance Company ("Hartford"). The contract also provides, if Marathon terminates Intrastate for cause, Hartford is responsible for taking over and performing the contract for Area 3. *Id.*

On June 3, 2009, Hartford issued performance and payment bonds in the amount of $2,061,000.00, through which Hartford bound itself as surety for Intrastate's performance of the Area 3 project contract (and to pay all losses, damages, expenses, costs, and attorney's fees incurred by Marathon as a result of any default by Intrastate) and for payment to all claimants supplying Intrastate with labor, material, or supplies used directly or indirectly in the Area 3 project. *See id.* at 932. Marathon subsequently issued its formal Notice to Proceed to Intrastate, which specified that the time to complete the project commenced on August 5, 2009.

The deadline for Intrastate's substantial completion of the Area 3 project was June 1, 2010. However,

> [b]y April 2010, approximately eight months after starting construction on the Area 3 [project], Intrastate was incurring losses on the project, and Intrastate's subcontractors and suppliers began filing "Notices of Nonpayment" with Hartford and Marathon. On April 14, 2010, Intrastate contacted Hartford to inform Hartford of Intrastate's insolvency and the need for financial assistance to complete its various bonded projects, including the Area 3 Project.

*Id.* at 933. Thereafter, "Hartford directly informed Intrastate and Intrastate's bonding agent that Hartford would no longer be issuing new bonds or expanding bond coverage on existing bonded projects." *Id.* at n.3

Nonetheless, on April 27, 2010, Marathon and Intrastate agreed to a change order (the "Area 7 Change Order"), under which Intrastate obligated itself to construct an additional wastewater treatment facility in Area 7 in exchange for $2,984,487 and to secure, "from Hartford or some other bonding company[,]" additional bond coverage in the amount of $2,984,487. *Id.* at 938-39. The Area 7 Change Order increased the original contract amount from $2,061,000 to $5,045,487. On June 30, 2010, after learning of the Area 7 Change Order, Hartford sent a letter to Intrastate stating that the Area 7 project was not covered by the previously-issued performance and payment bonds, and that Hartford had not agreed to provide additional bonding for the Area 7 project. "[M]ore than a month passed between Hartford's June 30 disavowal[, and] . . . in the interim, Intrastate still provided no bond for 100% coverage." *Id.* at 939.

Soon after, on August 6, 2010, before Intrastate had achieved substantial completion on the Area 3 project, Marathon sent Intrastate a Notice of Default and

3

Termination letter, which threatened to terminate Intrastate for cause—based upon Intrastate's failure to secure additional bond coverage for the expanded scope of work—unless Hartford retracted its June 30 letter disavowing coverage for Area 7 within seven days. *See id.* at 934. Intrastate performed no more work after receiving the Notice of Default and Termination. *Id.* Rather than retracting its June 30 letter, Hartford initiated the instant declaratory judgment action on August 9, 2010, asking the Court to determine and adjudicate the legal rights between Hartford, Intrastate, and Marathon with respect to Hartford's liability for Area 7 under the performance bond. And, three days later, "Hartford wrote to Intrastate reaffirming its June 30 letter and stating that it would not issue a bond for Area 7." *Id.* at 935.

"Between early September 2010 and early November 2010, Hartford, Intrastate, and Marathon unsuccessfully attempted to negotiate a global settlement." DE 208, at ¶ 19. On October 18, 2010, Marathon counterclaimed against Hartford for breach of contract relating to Hartford's failure to fulfill its obligations under the performance bond with respect to Area 3. *See* DE 19. And, "[b]y November 4, 2010, global settlement negotiations had failed." DE 208, at ¶ 23. On November 5, 2010, Hartford informed Marathon that it would be willing to take over the completion of the Area 3 project, and presented Marathon with a takeover agreement outlining the terms of the takeover, *Id.* at ¶ 23. However, Marathon found the terms of the takeover agreement unacceptable, and requested that Hartford simply perform the original bonded contract. *Hartford*, 501 F. App'x at 935-35. Hartford declined to do so. *Id.*

4

In December of 2010, Lanzo Construction Company ("Lanzo") submitted an offer to step in and complete the Area 3 project within 120 days in exchange for $1,442,782. DE 208, at ¶ 29. On January 5, 2011, Marathon accepted a revised proposal from Lanzo to compete the Area 3 project, in which Lanzo offered to complete the project within 150 days for a lump sum contract price of $1,362,782 (the "completion contract"). While Lanzo had initially contracted to begin work "no later than January 17, 2011,"[1] due to complications in securing bonding for the project, Lanzo did not begin working on the Area 3 project until March 9, 2011, and Lanzo's substantial completion deadline was extended to August 7, 2011. *Id.* at ¶¶ 31-33. During the course of Lanzo's work on the Area 3 project, Marathon granted it forty-four days of extensions of the substantial completion deadline due to change-order work for work (in the amount of $94, 420.58) that was outside the scope of Intrastate's original contract. *Id.* at ¶ 34. Lanzo achieved substantial completion of the project on September 15, 2011. *Id.* at ¶ 35.

## II. Marathon's Damages

### A. Completion Costs

Marathon paid Lanzo a total of $1,455,202.58 for the completion of Area 3, which included $94,420.58 for change order work not included in the Contract—for which Marathon does not seek reimbursement. The evidence establishes that Marathon paid Lanzo eleven (11) payments via check in the amounts and on the dates set forth below:[2]

---

[1] With a substantial completion deadline of June 16, 2011.
[2] As noted, the total paid to Lanzo exceeds the amount set forth in Lanzo's completion contract—and Marathon only seeks to recover the amount paid to Lanzo, less the contract balance at the time of Intrastate's default ($982,550.12), less change order work above and beyond the scope of Intrastate's original contract ($94,420.58).

5

| Application No.[3] | Date | Check No. | Check Date | Check Amount |
|---|---|---|---|---|
| One (1) | 03/11/2011 | 025418 | 03/14/2011 | $301,025.51 |
| Two (2) | 03/11/2011 | 025419 | 03/14/2011 | 67,050.00 |
| Three (3) | 05/02/2011 | 026074 | 05/27/2011 | 112,252.70 |
| Four (4) | 06/03/2011 | 026328 | 07/01/2011 | 215,028.67 |
| Five (5) | 07/05/2011 | 026584 | 08/05/2011 | 186,219.56 |
| Six (6) | 08/05/2011 | 026946 | 09/21/2011 | 171,417.57 |
| Seven (7) | 09/06/2011 | 027149 | 10/14/2015 | 78,017.92 |
| Eight (8) | 10/03/2011 | 027425 | 11/11/2011 | 253,254.00 |
| Nine (9) | 11/04/2011 | 027628 | 12/09/2011 | 36,630.65 |
| Ten (10) | 12/07/2011 | 028462 | 03/28/2012 | 23,476.00 |
| Eleven (11) | 03/05/2012 | 028819 | 05/11/2012 | 10,830.00 |

As set forth in Intrastate's original Area 3 contract, in the event that Marathon was obliged to complete the Area 3 project itself, Hartford is liable to Marathon for costs in excess of the original contract price expended by Marathon to complete the project. While the completion contract was in the amount of $1,362,782.00, Marathon paid Lanzo $1,360,782.00[4] to complete Area 3 and the remaining Area 3 contract balance at the time of Intrastate's default was $982,550.12. Thus, as a starting point, Hartford may be liable for up to $378,231.88 in excess completion costs paid to Lanzo.

Marathon's payment to Lanzo in excess of the original contract ($378,231.88) was largely comprised of $335,189.00 paid to satisfy outstanding payables for unpaid subcontractors contracted by Intrastate. Indeed, Pay Application Number One (1), in the

---

[3] The "Application No." refers to the numbered pay applications Lanzo submitted to Marathon for work performed to complete Area 3.

[4] $1,455,202.58 - $94,420.58 = $1,360,782.00

amount of $301,025.51, was paid to Lanzo for the payment of the unpaid subcontractors, as well as an additional $34,163.49 from Pay Application Number Eight (8).[5]

Marathon also established that it paid $46,234.00 to Weiler Engineering ("Weiler") for additional engineering work associated with the completion of Area 3, which the Court finds was reasonable and necessary. Further, Marathon paid U.S. Water $2,808.00 to keep the Area 3 site in good order and to prevent equipment installed at the site from suffering unnecessary deterioration in the interim between Intrastate's default and Lanzo's resumption of work on the project. Accordingly, Marathon's total excess completion cost was $427,273.88.

Marathon reasonably, and in good faith, expended $427,273.88 to complete the Area 3 project. The expenditures were necessary, reasonable, and neither extravagant nor wasteful. Not only were Marathon's excess costs reasonable because of the additional risk to the replacement contractor, but the increased costs of hiring a replacement contractor are well known in the industry. Marathon did well to contract Lanzo at a price only $43,042.88 in excess of the contract balance to complete the Area 3 work—that the cost was further increased by the need to pay $335,189.00 for Intrastate's outstanding payables to subcontractors is unfortunate, but it is no more than Hartford was obligated to pay under its payment bond in any event. Moreover, as recognized by Hartford's own expert, a contractor's cost are often more expensive when assuming a project that is more

---

[5] While Hartford contests whether Lanzo actually paid the subcontractors the additional $34,163.49, the pertinent fact is that Marathon paid this amount to Lanzo for that purpose.

than halfway complete, versus a project has just begun, and a completion cost only $45,000 above the contract balance is a reasonable amount.

Marathon also attempted to mitigate Hartford's damages by attempting to negotiate a tri-party settlement of the lawsuit Hartford initiated. And, when those settlement negotiations failed, Marathon gave Hartford the option of taking over the project pursuant to the bonded contract. Moreover, Marathon negotiated for a revised completion offer from Lanzo, which resulted in a completion contract price of $1,362,782.00 instead of $1,442.782.00.

### B. Liquidated Delay Damages

The Area 3 contract provides for liquidated damages in the amount of $1,500.00 for each calendar day that expires after the time specified for substantial completion of the project. Intrastate was obligated to achieve substantial completion of the Area 3 project by June 1, 2010. Lanzo achieved substantial completion of the Area 3 project on September 15, 2011. There are 471 calendar days between June 1, 2010 and September 15, 2011.

### CONCLUSIONS OF LAW

The Eleventh Circuit found "Marathon terminated Intrastate for cause[, thus,] Hartford remained obligated on its performance bond for Area 3." *Hartford*, 501 F. App'x at 939. The contract provides that in the event of termination for cause, Marathon may complete the Area 3 project with its own forces or by engaging the services of other parties. The contract also provides that if—after exercising such remedy— the costs to Marathon are in excess of the contract balance, Intrastate and Hartford *shall* be liable for

8

and *shall* reimburse Marathon for such excess costs and liquidated delay damages. Accordingly, as a matter of contract law, Hartford owes Marathon all excess costs Marathon reasonably incurred to achieve performance of the contract along with Marathon's liquidated delay damages.

## I. Completion Costs

To say nothing of the plain language of the Contract, under Florida law, where an owner completes the construction of the project, "the proper measure of damages . . . is the 'actual cost' to complete the work . . . .'" *Kritikos v. Andersen*, 125 So. 3d 885, 888 (Fla. 4th DCA 2013). While the owner must prove that the job was completed at a reasonable cost, or in good faith, and the amount that was actually expended with a reasonable degree of certainty, *R.K. Cooper Builders, Inc. v. Free-Lock Ceiling, Inc.*, 219 So. 2d 87, 89 (Fla. 3d DCA 1969) (citing *Nello L. Teer Co. v. Hollywood Golf Estates, Inc.*, 324 F.2d 669 (5th Cir. 1963), *cert. denied*, 377 U.S. 909), a rebuttable presumption exists that "costs actually incurred are in fact reasonable." *ADF Intern., Inc. v. Baker Mellon Stuart Constr., Inc.*, 2000 WL 34251821, at *10 (M.D. Fla. Dec. 28, 2000) *reversed in part, vacated in part, and remanded on other grounds*, 31 F. App'x 939 (11th Cir. 2002). Indeed, "controlling weight should be given to the actual expenditures, made in good faith, that are necessary to complete the job covered by the original contract." *R.K. Cooper*, 219 So. 2d at 88.

There is no question that Marathon hired Lanzo to complete Area 3 and paid Lanzo $1,360,782.00 to complete the original scope of work for the Area 3 project, of which $378,231.88 exceeded the contract balance, and that the money went to complete

9

the Area 3 project.[6] Marathon presented ample evidence showing applications for payment from Lanzo and checks from Marathon to Lanzo in these amounts.

The $378,231.88 in excess of the contract balance paid to Lanzo as completion contractor was reasonable—the amount is comprised, for the most part, of the $335,189.00 Marathon paid to Lanzo to cover the cost of Intrastate's unpaid subcontractors. Excluding the amount paid to cover Intrastate's outstanding payables, Marathon managed to have Area 3 completed for only $43,042.88 more than the contract balance, which is reasonable in light of Lanzo's status as a replacement contractor and the inherent risks and costs associated with taking over a failed contractor's work. Additionally, the Court finds that the testimony of Hartford's expert was insufficient to rebut the presumption that the costs incurred were reasonable. Hartford's expert merely opined that certain costs in Lanzo's Schedule of Values seemed high when compared to Intrastate's Schedule of Values. However, she also testified that it is regular industry practice for contractors to inflate some costs in schedules of values to build their profit into their bid. Accordingly, the fact that certain costs in Lanzo's Schedule of Values were higher—while others were lower—than those in Intrastate's Schedule of Values, is to be expected.[7]

An owner's costs of completion damages also include "the engineering and architectural fees reasonably necessary to accomplish the reconstruction." *Centex-Rooney*

---

[6] This amount excludes $94,420.58 expended for change order work, which Marathon does not seek to recover.

[7] Hartford's expert testified that the manner in which contractors pad their Schedule of Values to include a profit is a matter of preference (as opposed to adding a straight-line percentage to each line item).

*Constr. Co. v. Martin Cnty.*, 706 So. 2d 20, 27 (Fla. 4th DCA 1998) (citation omitted); *Temple Beth Shalom & Jewish Cntr. v. Thyne Constr. Corp.*, 399 So. 2d 525, 526 (Fla. 2d DCA 1981) ("We reverse the amount of the award and remand the case for a new trial on damages in which Temple will be entitled to recover what it would have reasonably cost to replace the roof according to the original design, together with any engineering and architectural fees reasonably necessary to accomplish the repair.").

The evidence presented at trial established that Marathon paid Weiler $46,234.00 for additional engineering costs associated with the completion of Area 3, which was necessitated by Intrastate's default and the need for reworking and retesting of the partially completed Area 3 project. The Court is satisfied that the $46,234.00 Marathon paid to Weiler was (1) a result of Intrastate's default and termination and (2) for work within the scope of work in Intrastate's Contract.

The evidence establishes that Marathon paid $2,808.00 in U.S. Water charges for Area 3, and that this amount was reasonable and necessary in order to keep the existing Area 3 site in good order and prevent equipment installed at Area 3 from pitting and rusting while the Area 3 project was stalled.

Thus, Marathon has established that that it expended completion costs totaling $427,273.88 in good faith—all of which were necessary to complete Area 3.

Moreover, Hartford's argument that Marathon failed to mitigate its damages is not well taken. Hartford argues that Marathon did not mitigate its damages by failing to bid out the Area 3 completion contract. The evidence establishes the converse of what Hartford argues—by using Lanzo to complete the Area 3 project, Marathon minimized

Hartford's damages. The difficulty of securing replacement contractors willing to assume the risks of completing failed projects is well recognized. Lanzo was operating in the Florida keys and was ready to step in and take over the project. Thus, additional delay damages would have accumulated and pre-existing construction likely would have deteriorated had Marathon put the Area 3 contract up for an open bidding process. Additionally, Marathon kept many of the same sub-contractors on the job (those whose work was not already complete) to avoid any further delays. *See, e.g.*, 5-17 Constr. Law 17-7 [8][a] ("Indeed, financing the original contractor may be the most economical solution if the contractor is trusted by existing subcontractors, suppliers and the owner."). Thus, Marathon's payment to Lanzo to cover the cost of Intrastate's unpaid subcontractors ($335,189.00) is further evidence of its mitigation efforts.

Accordingly, upon consideration of the substantial evidence presented at trial, the Court finds that Marathon is entitled to recover excess completion cost damages in the amount of $427, 273.88, plus prejudgment interest.

## II. Liquidated Damages

Marathon seeks liquidated delay damages in the amount of $1,500 for every single calendar day between the substantial completion deadline of June 1, 2010, and the actual substantial completion date of September 15, 2011. In response, Hartford argues that Marathon caused at least some of the delay incurred during this 471 day period, and that—should the Court agree with Hartford—Marathon's entire liquidated delay damages claim must fail.

Undisputed evidence adduced at trial shows: 1) Intrastate, Marathon, and Hartford were engaged in tri-party settlement negotiations for sixty-four days between September 2, 2010 and November 4, 2010, 2) Marathon and Lanzo executed an Assignment and Assumption of the Area 3 contract to Lanzo on January 11, 2011, in which Lanzo agreed to begin construction "no later than January 17, 2011," and Lanzo did not begin work until March 9, 2011—fifty-two days later, 3) Lanzo's completion contract was modified via change orders to include work that was above and beyond the scope of Intrastate's original contract, 4) Lanzo was granted forty-four days of extensions to its substantial completion deadline due to this change order work, and 5) Lanzo achieved substantial completion forty days later than the pre-extension substantial completion deadline.[8]

Under Florida law, when delay damages are apportionable between the party seeking damages and the party opposing damages, there is an affirmative burden on the party seeking damages to present a reasonable basis for apportioning fault between the parties. *See Gesco, Inc. v. Edward L. Nezelek, Inc.*, 414 So. 2d 535, 538 (Fla. 4th DCA 1982). However, this burden is not absolute. If the defendant is responsible for all of the delay, there is no requirement that the plaintiff present a reasonable basis for apportionment. *See U.S. ex rel. Gray-Bar Electric Co. v. J.H. Copeland & Sons Constr., Inc.*, 568 F.2d 1159, 1162 (5th Cir. 1978). Indeed, such a requirement would serve no purpose.

---

[8] Pursuant to Lanzo's Notice to Proceed, dated March 9, 2011, Lanzo's substantial completion deadline was August 7, 2011, and Lanzo did not achieve substantial completion until September 15, 2011.

In *Gesco*, the Fourth District Court of Appeal affirmed the trial court's rejection of an owner-developer's claim for delay damages against its contractor based on a finding that the owner-developer 1) was itself responsible for a considerable portion of the delay for which it claimed damages and 2) failed to establish a reasonable basis for apportioning responsibility for the total delay. *Id.* at 538. Thus, Florida law places an affirmative burden on those who would seek delay damages to "provide a reasonable basis for apportioning damages" when "there are factors for which the defendant is responsible and factors for which it is not." *Gray-Bar Electric*, 568 F.2d at 1162.

In the case at bar, Marathon makes an unapportioned delay claim (a so-called "total delay" claim), without any basis for apportioning delay between the parties, for liquidated damages for each of the 471 days between June 1, 2010 and September 15, 2011. Upon consideration, the Court finds that Marathon is concurrently responsible for sixty-four days of delay during settlement negotiations, and responsible for forty-four days of delay during change order work that was above and beyond the scope of Intrastate's contract. Based upon this finding, Marathon's claim for liquidated delay damages must fail.

## CONCLUSION

Accordingly, the Court concludes that Marathon is entitled to recover $427,273.88 in excess completion costs,[9] plus prejudgment interest, and that Marathon shall recover no liquidated damages. Marathon shall, within thirty (30) days, file any claim for

---

[9] Comprised of $378,231.88 paid to Lanzo, $46,234.00 paid to Weiler, and $2,808.00 paid to U.S. Water.

attorneys' fees and costs. Hartford shall respond to any motion for attorneys' fees and costs within thirty (30) days thereafter, and Marathon shall file any reply within fifteen (15) days of Hartford's response. Upon the Court's determination of the attorneys' fees and costs, the Court shall enter an appropriate final judgment in favor of Marathon and against Hartford.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 31st day of July, 2015.

                                                          _____
                                                          JAMES LAWRENCE KING
                                                          UNITED STATES DISTRICT JUDGE
                                                          SOUTHERN DISTRICT OF FLORIDA

**Cc: All Counsel of Record**